## Peters *et al.* versus Florence *et al.*

*Mistakes relieved against, in Equity.—Extent of Relief in such cases.*

1. Where a person paid a mortgage under a mistaken supposition that he was the owner of the property, or that as executor of his deceased wife he was bound to pay it, she having executed the mortgage in her lifetime, it was *held*, that the erroneous supposition that he was liable to pay as the executor of his wife, whatever might be said in regard to mistake of ownership, was nothing but a misapprehension of the law, against which equity does not relieve.

2. In ejectment to try the title to this property, the defendants, whose only equity grew out of this mistaken payment, were not entitled to have a conditional verdict found for the plaintiffs, which would require them to pay the amount of said mortgage before they could gain possession of the property. The verdict should have been for the plaintiffs unconditionally.

3. In such case, even if there had been a mistake of fact in the payment of the mortgage, it would give no equitable right in the property which would entitle the defendants to a conditional verdict against them; for if the mistake had never been made, the mortgage would be no protection to them.

CERTIFICATE from Nisi Prius.

This was an action of ejectment, brought March 1st 1859, by Benjamin Peters, Sarah Peters, Matilda Carothers, Joseph A. Maybin, and Daniel Oldenbergh, heirs at law of Frances Eliza Peters, against Thomas B. Florence, tenant, Anna M. Lewis, Margaretta Lewis, Richard Wistar, Jr., W. Lewis Wistar, Rachel Wistar, Fannie Scott, late Wistar, and Sarah Hopkinson, late Wistar, heirs of Wharton Lewis, deceased, for a house and lot in Third street, on the corner of Springer Lane, between Lombard and South streets, in the city of Philadelphia.    On the 12th of April 1805, the premises were purchased, with the consent of her husband, by Mrs. Frances E. Cuthbert, under whom the plaintiffs claimed as heirs at law.    September 19th 1811, James L. Cuthbert, and his wife, the said Mrs. Cuthbert, joined in giving a bond and a mortgage upon these premises, to her mother, Mrs. Lawerswyler, for $3697.71.    Mrs. Cuthbert survived Mr. Cuthbert, and married a second husband, Wharton Lewis, under whom the defendants claimed as heirs at law.    On the 3d of August 1847, Mrs. F. E. Lewis, in virtue of a power contained in a settlement made in trust for her by her father, made her will, which purported to give all her property to her

[Peters v. Florence.]

husband, Wharton Lewis, whom she also made the executor of her will. She died on the 31st of August 1848. Acting as her executor, Wharton Lewis paid the said mortgage, and entered satisfaction on the record May 12th 1849. His account, filed in the register's office, September 18th 1849, acknowledged a balance of personalty of $12,751.13, which he received as sole legatee under her will. By his death, August 31st 1857, the estate for life in the premises by the courtesy determined, and the property devolved upon the heirs of Mr. Lewis. On the trial of the cause at Nisi Prius, February 9th 1860, C. J. LOW-RIE charged the jury that the plaintiffs were entitled to recover; "but if they (the jury) think that the payment by Wharton Lewis of the mortgage, was made by mistake, on the supposition that he was the owner of the lot; or, that as executor of his deceased wife, he was bound to pay it, then their verdict shall be with the condition that execution shall not issue until the plaintiffs shall have paid to E. Waln, the administrator of the said Wharton Lewis, the amount which would be due on the said mortgage, if the same had been assigned to him, and subject to the opinion of the court on the point reserved, to wit: can we in this action allow the mistake to be corrected by a conditional verdict?"

February 27th 1860, the court directed judgment to be entered for the defendants on the point reserved.

The plaintiffs thereupon requested a certificate to the court in banc, assigning said charge and ruling as error.

And also, that the judge at Nisi Prius erred in giving judgment on the point reserved, to wit, that the mistake could be corrected by a conditional verdict, and in not charging that the plaintiffs were entitled to recover absolutely, without any condition.

*Benjamin Gerhard* and *James Parsons,* for plaintiffs in error. —The property in dispute belonged to Mrs. Cuthbert. Her husband's assent to the purchase, though necessary to complete the conveyance, was merely formal, and did not make the property his. The debt secured by the mortgage was also hers, and was not a charge on it, as distinguished from a lien. It was merely a security for the payment of the debt, not a burden on the specific property alone. Her personal estate was therefore liable in the first instance, the mortgage being only a security for it: 1 Lead. Cas. Eq. 642; Hocker's Appeal, 4 Barr 497. When the land is the principal debtor, the converse of the proposition is true: Torr's Estate, 2 Rawle 252; McCoy v. Scott, 2 Rawle 222. The fact that the land can be resorted to in the first instance, does not affect the question, inasmuch as that arises out of a personal agreement, as a matter of convenience, and does

[Peters *v.* Florence.]

not enter into the nature of the property, which can and will be considered on final adjustment of the rights of claimants.

The case of marshalling assets as between creditors, presents an exception to this principle which is only so in appearance; for such cases turn on precedence of claim without, and independent of any consideration of the real estate.

The contribution sometimes enforced between devisees of land encumbered by liens, which render it difficult to carry out the testator's disposition of the estate, is in favour of the principle contended for, because it is founded on the presumption that the land is a chattel for the payment of debts, and is considered personalty for this purpose. But even this is restricted to cases where the intent of the testator is manifest: 2 Lead. Cas. Eq. 251; 1 Id. 640; Walker's Estate, 3 Rawle 229; 1 Lead. Cas. Eq. 641; 2 Id. 252–4; Hoff's Appeal, 1 Harris 200.

The testatrix here did not intend to exempt the personalty from the payment of this debt, for no mention is made of it, and in the absence of such intent, the law makes it primarily liable. His appointment as executor charged him with the payment of all debts against the estate, leaving him only the residue. The court will carry out the will of testatrix, but will not go behind it, and say that as she was in error when she thought she was devising this property to her husband, they will by way of compensation relieve him from his liability incurred by taking under the will as residuary legatee. It cannot be said that he is not liable for her debts contracted before marriage, having received the property *jure mariti;* because if he neglected to convert her choses in action to his own use, during coverture, they again became liable for her debts contracted before marriage: Macqueen on Husband and Wife 187; Heard *v.* Stanford, Cas. Temp. Talb. 173; 3 P. Wms. 405; and this works with greater force when applied to her separate estate, which never was under his control. But granting this whole argument invalid, and that the husband paid this debt by mistake, when he was not liable for it, he could not ask to be relieved in a court of equity; for it was the result of his own remissness in not ascertaining that his wife could not by law convey the fee of this property to him. It is the duty of every citizen to make himself acquainted with the law, and if he neglects to do so, he must suffer the consequences. In this instance payment was made by a person on the supposition that he was tenant in fee under a will, which turns out afterwards to be so far invalid, and leaves him as husband tenant for life by the courtesy. He is obviously entitled to no relief, because he did not ascertain that the capacity of a married woman to dispose by will of her estate, is strictly limited to the power in her marriage settlement: Hayes's Outlines of Equity 133; Bilbie *v.* Lumley, 2 East 469; Story's Eq. 128–137.

[Peters v. Florence.]

*E. Waln* and *G. M. Wharton*, for defendants in error.—The debt for which the mortgage of Cuthbert and wife was given, was purely the debt of the husband; his bond was the principal obligation, and the mortgage of the wife's property was only collateral to it. The mortgaged land, and not Mrs. Cuthbert (afterwards Lewis), was the surety for the payment of the debt. Wharton Lewis mistook his rights, and under this mistake paid off the mortgage, which fact the jury found by a special verdict. He did not know the *fact* that he was merely tenant for life by the courtesy, but thought himself tenant in fee of the premises. Wilson *v.* Gibbs, 4 Casey 151, was a case parallel to the present one.

It is a constructive fraud on the part of the real owner to lie by and permit an existing encumbrance,. diminishing by so much the value of the inheritance at the time of the descent cast, to be removed in good faith by the person in possession under a defective title, and then seek to recover without compensation for such expenditure: 1 Story's Equity Juris., § 388; Bright *v.* Boyd, 1 Story 478. Where the owner is ·plaintiff, seeking to enforce his right, the maxim, "he who seeks equity shall do equity," applies, and the defendant can demand compensation independently of any constructive fraud to be imputed to plaintiff: 2 Story's Eq. Jur., § 799 a. See further, §§ 1237-8-9.

The mistake can be corrected by a conditional verdict, which takes in our practice the place of a bill in equity; and any defence may be set up which could avail in a court of chancery: Peterman *v.* Huling, 7 Casey 432; Crow *v.* Crow, 8 Id. 216; Lynch *v.* Cox, 11 Harris 265; Chadwick *v.* Felt, 11 Casey 308; Hagey *v.* Detwiler, 11 Id. 413; Paul's Executors *v.* Eldred, 5 Id. 415; Coughanour *v.* Bloodgood, 3 Id. 287; Peebles *v.* Reading, 8 S. & R. 491; Muse *v.* Fetterman, 13 S. & R. 171; Moody *v.* Vandyke, 4 Binn. 41; Biddle *v.* Moore, 3 Barr 161.

The opinion of the court was delivered, February 4th 1861, by STRONG, J.—The legal title to the lot in controversy is confessedly in the plaintiffs. If the defendants have any right to retain possession, it is because there is some equity in them, arising out of the payment of the mortgage to Mrs. Lawerswyler by Wharton Lewis during the continuance of his life estate. Taking then the facts as the case presents them, that Mr. Lewis was the executor of the will of his wife, as well as tenant for life of the lot of ground, that after his wife's death, he as executor paid the principal and interest of the mortgage, and thus extinguished it at law; that he took no assignment of it, but paid it under a mistaken impression, either that it was his duty as executor to pay it, or that he owned the lot in fee simple; did his payment under such circumstances raise in him an equity which

[Peters *v.* Florence.]

descended to his heirs or personal representatives—an equity which they can enforce by holding possession of the lot until they shall be reimbursed what Wharton Lewis mistakenly paid?

The general principle cannot be denied that equity will not relieve against a mere mistake of the law. It is true the principle, as an universal one, has been sometimes doubted. A few cases are to be found in the English books, in which relief was granted against a mistake of the law; but in all, or nearly all of them, there had been also a mistake of fact, or surprise, or fraud practised upon the party applying for relief, or a relation of confidence between contracting parties. Among them are some in which the question has been debated whether a mistake of the extent of a party's ownership of the subject-matter of a contract is to be regarded as a mistake of law or of fact. If the ignorance which causes the mistake be of the circumstances out of which the title or ownership arises, as for example, if a party's relationship to a testator or a deceased intestate ancestor be unknown to him, or if he be ignorant of the existence of a devise in his favour, there is no difficulty in the question. Such ignorance is that of fact, and a mistake caused by it is a mistake of fact. But if with full knowledge of his relationship, or with the will which creates his title lying before him, he makes a contract under an impression that he has a less estate than the law gives him, it is difficult to see how a mistake in the contract induced by that erroneous impression can be anything else than a mistake of law. Still, it must be admitted, that such a mistake has been sometimes treated as one of fact, and there have been a few decisions in England, that a court of equity may relieve against a contract made in ignorance of title founded in mistake of a plain and settled principle of law. Mr. Justice Story remarks, in his work on Equity Jurisprudence, Vol. 1, § 137, that "in this country the general rule that ignorance of the law furnishes no ground for relief against a mistake, has been recognised as founded in sound wisdom and policy, and fit to be upheld with a steady confidence." "And hitherto," says he, "the exceptions to it, if any, will be found not to rest upon the mere foundation of a naked mistake of law, nor upon mere ignorance of title founded upon such mistake. We do not propose, however, to assert either that equity will or will not relieve against an act done in mistake of title growing out of ignorance of the law. Such a decision would require a long and thorough examination of past adjudications, and this case does not call for it. Here the jury were instructed to find only a conditional verdict for the plaintiffs, in either of two contingencies: first, that Wharton Lewis paid the mortgage under the mistaken supposition that he was the owner of the lot; or secondly, that his mistake was that he was bound as executor of his deceased wife to

[Peters *v.* Florence.]

pay it. Now, whatever may be said in regard to his mistake of ownership, whether that be regarded as a mistake of fact or of law, and whether such a mistake be relievable against or not, it is clear that an erroneous supposition that he was liable to pay as the executor of the will of his deceased wife, was nothing but a misapprehension of the law. I think no case can be found in which equity, against such a mistake, has ever relieved.

And if relief were possible in such a case, what relief would a chancellor give? He will set aside an agreement made under a mistake, but he will never make a new agreement for the parties, an agreement not contemplated when the mistake was made: Hunt *v.* Rousmanier, 1 Peters 13. Such a power is nowhere asserted. But to warrant a conditional verdict in this case, a new contract, one not thought of when Mr. Lewis paid the mortgage, and made the mistake, is indispensable to the defendants. Merely setting aside what was done under that mistake, would not help them. If they have any equity in the lot in controversy, or any right which entitles them to the benefit of a condition in the verdict, it is because they are protected by the mortgage to Mrs. Lawerswyler, in other words, because they are the owners of it. The mortgage, however, was paid by Mr. Lewis, and he took no assignment of it. No assignment of it was contemplated, but rather its extinguishment. Under such circumstances, a chancellor would be without power to decree an assignment, and thus make a new contract between the mortgagee and Mr. Lewis. It matters not, therefore, if there was a mistake, even of fact, in the payment of the mortgage. It could give rise to no equitable right in the lot, which would entitle the defendants to a verdict and judgment only conditional against them, for if the mistake had never been made, the mortgage would be no protection to them.

This is very unlike the case of Wilson *v.* Gibbs, 4 Casey 151. There Brown, being without title, made a deed of a lot of ground to Berry, who subsequently purchased a ground-rent issuing out of it. The ground-rent was conveyed to Berry by deed poll, "granting, bargaining, selling, releasing, and extinguishing" it. His title to the lot having proved worthless, the question was whether his right to the ground-rent was also gone. It was ruled that it was not. It was not, however, equity that kept the ground-rent alive. There had been a formal conveyance of it to Berry, but as he had no interest in the lot out of which it issued, it could not merge, and the deed could not operate as a release or extinguishment, because there was no privity of estate between the releasor and the releasee. It was intended to extinguish the rent by uniting the corporeal and incorporeal estates in one person, but as they were not so united, the intention failed of being carried into effect. The deed necessarily, there-

[Peters *v.* Florence.]

fore, operated as a conveyance.   Berry needed no equitable aid, and he got none.   His was a clear legal right.

It is hardly necessary to say, in reply to an argument of the defendants, that the mistake of Mr. Lewis, in paying the mortgage, furnished no basis for an allegation of a constructive fraud. Undoubtedly, if the true owners of land, knowing their own rights, stand by and see another expend money upon the land, under a mistaken conviction that it is his, they will not be permitted to avail themselves of that expenditure, without making compensation for it.   The fraud, however, consists not in the mistake, but in the concealment or negligence so gross as to amount to dishonesty.   In this case there is nothing but a mistake at most, a mistake which cannot be rectified in a contest for the possession of the lot for which the ejectment is brought.

We think, therefore, that error appears upon this record in the instruction given to the jury to find for the plaintiffs only a conditional verdict, if they believed the payment of the mortgage by Wharton Lewis was made by mistake, on the supposition that he was the owner of the lot, or that, as executor of his deceased wife, he was bound to pay it.   The same error appears in the judgment given upon the reserved point.

> The judgment is reversed, and judgment is entered unconditionally for the plaintiffs.