## JACOB GOETTEL v. M. W. SAGE ET AL.

### ERROR TO THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 6, 1887—Decided October 17, 1887.

Where by a mutual mistake between a vendor and a vendee the former, though holding title to one of two parcels of a tract of land, has conveyed to the latter, by a quit-claim deed, the parcel to which he had no title and received a bond in part consideration therefor, the vendee may set up the mutual mistake as a defence against the payment of the bond.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, J. J.; TRUNKEY and CLARK, JJ., absent.

No. 152 October Term 1887, Sup. Ct.; court below, No. 46 January Term 1886, C. P.

In the court below this was an action of debt brought on January 14, 1886, by Miles W. Sage and Jacob Sheasley against Jacob Goettel, to recover upon a bond dated December 10, 1883, for $1,300.

At the trial on June 9, 1886, before CHARLES E. TAY-LOR, P. J., the bond having been proven and admitted, the defendant introduced evidence showing that it had been given to secure in part the consideration of a conveyance by the plaintiffs to the defendant of the western half of a certain tract of land, which the vendors claimed to hold under a title derived from a tax-sale of the land as the property of one Alfred Pearce; that after the exchange of the deed and bond, it was discovered that the plaintiffs had no title of any kind to the western half of the tract, which had never been owned by Alfred Pearce, but did hold a tax-title derived through said Pearce to the eastern half of said tract which had been sold for taxes against Pearce; that thereupon the defendant had tendered a reconveyance and refused payment of the bond. In the course of the trial, the following offer was made:

Mr. Heydrick, for the defendant:

We now offer to prove that in and prior to the years 1868, one Alfred Pearce had title to the eastern half of tract No. 68, containing 100 acres, together with 50 acres of tract No. 67 adjoining No. 68 on the east, and 50 acres of tract No. 47, adjoining No. 67 on the east, being altogether 200 acres, con-stituting one tract or single body of land acquired at one time; that after his acquisition of this land it was assessed as fol-lows: "Alfred Pearce, No. 47–68, 200 acres;" that subse-quently the number 47 was dropped, and in the assessments for the years 1872 and 1873, which are the basis of plaintiffs' alleged tax title, the assessment was "Alfred Pearce, No. 68, 200 acres;" and that the western half of tract No. 68 was in the years 1872 and 1873, and always prior and subsequent to those years, owned by other persons than Alfred Pearce; that it was continuously assessed to the owners thereof and the taxes thereon paid by such owners either in cash or by sale of the land, and that it was never owned by Alfred Pearce.

Mr. Criswell, for plaintiffs: We object to it as irrelevant.

By the court: We will have to overrule the offer as irrele-vant.[1]

The court charged the jury:

The plaintiffs bring this action to recover a certain sum, being the amount which the defendant acknowledged to be

due to them, secured by a bond which has been given in evidence. The bond seems to have been given to secure a balance of purchase money for land. This purchase money is all due and unpaid.

[The defence here we think is hardly a good one, and for that reason we instruct you that your verdict, if you believe the evidence, should be for the plaintiffs for the balance which you find due upon the bond, with interest as provided in the bond.] [2]

The jury returned a verdict for the plaintiffs in the sum of $1,573, and judgment was entered thereon. The defendant then took this writ, assigning for error:

1. The rejection of the defendant's offer. [1]

2. The part of the charge embraced in [ ] [2]

*Mr. C. Heydrick* (with him *Mr. H. D. Hancock*), for the plaintiff in error:

1. For the purposes of the argument every fact alleged in the offer must be taken as proved. The offer showed a mutual mistake and such failure of consideration as to constitute a perfect defence: McDowell v. Meredith, 4 Wh. 311; Geiger v. Cook, 3 W. & S. 266; Bellas v. Hays, 5 S. & R. 427; Babcock v. Day, 104 Pa. 4; Wilson's App., 109 Pa. 606.

2. The defence is an equitable one, arising out of the same transaction; for if the consideration fail, the plaintiff's right to recover must fail: Heck v. Shener, 4 S. & R. 252; Blessing v. Miller, 102 Pa. 45; Patterson v. Hulings, 10 Pa. 506; Murphy v. Jones, 7 Ind. 529; White v. Lowry, 27 Pa. 254; Hessner v. Helm, 8 S. & R. 178; Youngman v. Linn, 52 Pa. 413; Commissioners v. Smith, 10 W. 391; Angier v. Eaton, 98 Pa. 594; Kachlin v. Mulhallon, 2 Dall. 237.

3. The defendant had the right to tender a reconveyance and have the contract rescinded: Babcock v. Day, 104 Pa. 4. The Orphans' Court, after execution and delivery of deed, payment of purchase money, and confirmation of sale, will decree a reconveyance and repayment: Johnson's App., 18 W. N. 205; which is in accordance with the principles of equity: 1 Story Eq. J., § 142.

*Mr. Geo. S. Criswell* (with him *Mr. J. H. Osmer*), for the defendants in error:

Not only the deed passed, which was a quit-claim, but the testimony of the only persons sworn, showed that what the defendant purchased was not land or any particular title to land, but the right, title and interest of the plaintiffs in the land described in the deed; and that this interest was purchased, not on the strength of representations made by the plaintiffs, but upon the result of an examination of the records by the defendants' own attorney. A claim to land may be sold at the risk of the purchaser and payment of the price agreed upon enforced, without reference to the title : Pennsylvania v. Simmons, Add. 9; McClure v. McClure, 11 Pa. 477 ; Herrod v. Blackburn, 56 Pa. 103 ; Steinhauer v. Witman, 1 S. & R. 438; White v. Lowry, 27 Pa. 254; Youngman v. Linn, 52 Pa. 413.

Opinion, Mr. Justice Williams :

This was an action of debt upon a bond. The defence set up was failure of consideration. The question raised by the assignments of error is, whether the facts which the defendant proposed to prove in support of this defence should be allowed to go to the jury. It is necessary to examine the facts out of which this litigation arises in order to a proper determination of this question.

The evidence shows that lots Nos. 47, 67 and 68, containing two hundred acres each, adjoined each other successively, and that Alfred Pearce was the owner of two hundred acres located in such manner as to occupy part of each of the said lots as shown in the diagram below.

Prior to 1872 Pearce's land was assessed in the manner following:

| Owners. | Numbers. | Acres. |
|---------|----------|--------|
| Alfred Pearce. | 47–68. | 200. |

In the years 1872 and 1873 the number 47 was dropped by the assessor and the assessment was left to stand thus:

| Owners. | Numbers. | Acres. |
|---------|----------|--------|
| Alfred Pearce. | 68 | 200. |

The taxes thus assessed for 1872 and 1873 were not paid and the land was sold at treasurer's sale. Sage, one of the plaintiffs below, and J. E. Muse, who not long after transferred his title to Sheasley, were the purchasers and received a treasurer's deed which followed the description in the assessment. The west half of No. 68 was owned by other parties to whom it was regularly assessed and by whom the taxes were paid. The east half only was owned by Pearce and it was upon that the taxes were unpaid.

In November, 1883, Goettel, desiring to purchase the west half of No. 68 and being informed that Sage and Sheasley claimed title to it, applied to Sage to know if they were the owners. He was informed by him that they were, and that they had a tax title to it which he believed to be a good title. Negotiations were then opened by Goettel for its purchase. He was informed by Sage that while they believed their title to be a good one they would not warrant it to be so, but would convey only by a quit-claim deed; and that he had better get an attorney to examine the title as they would sell in no other way. Goettel accordingly employed an attorney to examine the records and ascertain the nature and validity of the title of Sage and Sheasley to the west half of No. 68. The attorney reported to him that he considered their title to be a good one, and Goettel then purchased the west half of No. 68 for two thousand dollars, paying seven hundred dollars in cash and giving the bond now in suit for the remaining thirteen hundred dollars. After the transaction was closed Goettel learned that the west half of No. 68 was owned by other parties to whom it was assessed and whose taxes had been paid; that Pearce never owned it; that it was at no time liable to sale for

unpaid taxes; and that he had absolutely nothing for his money and his bond. He then tendered a re-conveyance to Sage and Sheasley and gave notice of his rescission of the contract. They declined the tendered re-conveyance and on the maturity of the bond brought this action.

The contention of the plaintiff below is that the defendant cannot now be heard upon the defence he sets up because they gave and he accepted a quit-claim deed. As there was no covenant of warranty, and no intentional fraud they insist that the plaintiff shall pay the consideration although he gets nothing whatever for it. This is against equity and no rule of law requires it. Let it be conceded that Sage and Sheasley believed they had a good tax title to the west half of No. 68 and were honest in expressing their opinions about its validity to Goettel. Let it also be conceded that the attorney who examined the tax records and advised that the title was good, behaved with fidelity to his client, and that Goettel purchased the title because he believed it to be good. Nevertheless the fact is, for the fact must be taken to be as expressed in the offer, that the vendors, the attorney and the vendee were all mistaken. The land had not been in arrears for taxes and could not have been sold by the treasurer. The vendors had no tax title to it and Goettel got none from them.

A similar question was raised in the Commissioners v. Smith, 10 W. 391. There an action was brought to recover the amount bid at a tax sale upon a lot in Kittanning borough sold as unseated. The defence was that the lot was seated and under cultivation when the taxes for which it was sold were assessed. This was held to be a good defence both in the court below and in this court. In the opinion it is said that "the land being seated was not within the power given to the county commissioners and their treasurer. The whole proceeding being coram non judice was void and it would be iniquitous to prevent the purchaser from showing it." The case in hand is a stronger one than the Commissioners v. Smith, for the taxes on the west half of No. 68 had been paid and nothing but a blunder on the part of the assessor furnished a pretext for the claim that Sage and Sheasley had a tax title to it. Why then shall not the purchaser be permitted to show that all parties to the contract dealt under the influ-

ence of a mistake and contracted about a thing that had no existence, viz., a tax title to the west half of No. 68? There is no reason in morals or in law.   This court recognized the right to rescind a contract made under the influence of mutual mistake in the recent case of Babcock v. Day, 104 Pa. 4, and in Wilson's App., 109 Pa. 606, and in Johnson's App., 18 W. N. 205.   It is apparent that the defence set up by the defendant is one that he has a perfect right to make, and as the facts grouped in the offer were competent and pertinent evidence in support of it, the court erred in rejecting it.

> Judgment reversed and venire facias de novo awarded.