First National Bank of Sunbury *v.* Rockefeller et al. (M. A. Hanna Co., Appellant).

Argued December 5, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

554

*Charles C. Lark* and *H. W. Savidge,* with them *Frederick E. Lark,* for appellant.

*Richard Henry Klein,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 22, 1939:

This is a proceeding to reinstate the liens of two mortgages which it is alleged were satisfied of record by inadvertence and mistake.

It appears that Oliver P. Rockefeller, who was a resident of Sunbury, Northumberland County, was indebted to the plaintiff bank at the time of his death on December 5, 1932, upon two bonds executed by him in the sums of $12,000 and $4,000, respectively, which were secured by first and second mortgages upon his home located at No. 36 North Fourth Street, in that city. The property was also subject to various judgments which were junior in lien to the mortgages. Decedent left a will in which he named his widow, Jennie A. Rockefeller, executrix, to whom letters testamentary were duly issued.

Under the terms of the will the executrix was empowered to sell decedent's real estate at either public or private sale, for the payment of his debts. Without applying to the Orphans' Court for authority to sell, she exposed the real estate, including the homestead on North

Fourth Street, to public sale on October 19, 1934. Before the sale she gave notice by registered mail to all lien holders, and caused publication thereof to be made in the local legal newspaper, that the property was to be sold under and subject to the two mortgages held by plaintiff. Notice to the same effect was read at the sale on behalf of the executrix and the plaintiff.

The property on North Fourth Street was sold to plaintiff bank for its high bid of $100, and thereupon the executrix delivered to plaintiff a deed dated October 23, 1934, which recited that the conveyance was made subject to the liens of the first and second mortgages. After the deed was recorded an officer of the plaintiff bank, upon November 5, 1934, caused both mortgages to be satisfied of record. It is now claimed by the bank that these satisfactions were entered by mistake of law and fact, which was not discovered until May, 1936, when it entered into negotiations for the sale of the property to a prospective purchaser.

It is alleged in plaintiff's bill to strike off the satisfactions that prior to the sale the attorney for the executrix who was "conducting the proceedings" represented to it that "the sale to be held on October 19, 1934, would operate in law as a discharge of all record liens subsequent to the lien of the mortgages, but would not discharge the lien of the plaintiff's mortgages against the real estate." Plaintiff avers that the satisfactions were entered in reliance upon that representation and in the belief that the deed from the executrix had conveyed to it a fee simple title, free and clear of the liens of the judgments. It is also alleged that no consideration was given for the satisfactions, and that the debt secured by the mortgages, amounting to $19,519.89 for principal, interest and taxes, remains unpaid—such sum being more than the reasonable value of the property at the time of the sale.

Answers were filed by the executrix and by several of the judgment creditors, in which it was averred, inter

alia, that plaintiff acted with a full knowledge of all the facts and circumstances, and that the mortgages were satisfied pursuant to an understanding to that effect; that if there was any mistake made with reference to the satisfactions, it was purely a mistake of law for which plaintiff is not entitled to relief. The executrix in her answer also avers that the plaintiff intended there should be a merger of the mortgages in the title to the property.

The court below decreed that the satisfactions be stricken from the record, and the mortgages reinstated. From the final decree dismissing exceptions this appeal has been taken by one of the judgment creditors.

The question presented is whether equity under the particular circumstances, will afford relief to plaintiff from the consequences of satisfying the mortgages.

It clearly appears from the record that the satisfactions were entered as the result of a mistake on the part of plaintiff with respect to the legal effect of the sale made by the executrix. It acted upon the erroneous belief that a public sale under the power contained in the will discharged the liens of the judgments subsequent to its mortgages. It seems to us that a refusal to permit the correction of the mistake so made would grievously penalize and cause undeserved injury to the plaintiff for its careless but innocent error, and at the same time would result in an unjust enrichment of the defendants at plaintiff's expense. This should not be suffered unless it is required by a literal adherence to the rule that a court of equity will not relieve against a mistake of law. Here there are no intervening rights of third parties involved. The plaintiff alone is injuriously affected by its own act which it seeks to set aside. The defendants have not changed their position in reliance upon the satisfaction of the mortgages. They have not parted with anything of value to secure the advantage which they are now seeking to retain. Indeed from the record it appears that they were unaware of the circumstances which improved their position, until the institution of

proceedings by the plaintiff to strike off the satisfactions of the mortgages. A decree in their favor would bestow upon them an unconscionable advantage to which they are not entitled, whereas to grant the relief sought merely places the parties in the positions held by them, before the mortgages were satisfied. In our opinion this is a case which presents equitable considerations which should move the conscience of a chancellor to correct the mistake that was made.

The time honored rule that ignorance or mistake of law with a full knowledge of the facts, is not per se a ground for equitable relief, has been approved and followed in numerous decisions of this Court. Among them may be cited *Good v. Herr,* 7 W. & S. 253; *Clapp v. Hoffman,* 159 Pa. 531; *Norris v. Crowe,* 206 Pa. 438; *Mulholland's Estate,* 224 Pa. 536; *Pa. Stave Co.'s Appeal,* 225 Pa. 178; *Clark v. Lehigh & W.-B. Coal Co.,* 250 Pa. 304; *Shields v. Hitchman,* 251 Pa. 455.* These cases for the most part deal with mistakes of law, pure and simple, where there are no circumstances giving rise to equitable considerations, which would move a chancellor to grant relief from a misapprehension or ignorance of a person's interests, rights and liabilities.

This rule has been often criticized (see *Miners & Merchants Bank of Nanty-Glo Case,* 313 Pa. 118), and, as Mr. Justice DEAN points out in *Norris v. Crowe,* supra, the trend of the decisions in our state has been to multiply the exceptions thereto, citing as examples the following cases: *Heacock v. Fly,* 14 Pa. 540; *Gross v. Leber,* 47 Pa. 520; *Whelen's Appeal,* 70 Pa. 410; *Goettel v. Sage,* 117 Pa. 298, and *Wilson v. Ott,* 173 Pa. 253. In the last mentioned case, we said, speaking by Mr. Jus-

---

* See Williston on Contracts, Rev. Ed. Vol. 5, Secs. 1581, 1582; Keener on Quasi-Contracts, page 85 et seq. See also Equitable Relief Against Mistake of Law Today, 23 Virginia Law Review, page 298. See Misrepresentation of Law, 32 Columbia Law Review, page 1018.

tice McCollum (p. 261): "As they [the authorities cited] are based on a review of the cases involving a consideration of the effect of a mistake of law they are worthy of notice as showing the trend of judicial thought on the subject, and the reluctance of the courts to sanction gross injustice under the claim that equity will not relieve against such a mistake."

The Superior Court, in *Price v. Shultz*, 85 Pa. Superior Ct. 78, in granting relief against a mistake of law, concerning the title to certain real estate, said (p. 83): "We have examined most, if not all of the cases decided by our Supreme Court involving this question and have found none in which relief against a gross injustice resulting from an innocent mistake of law has not been granted where it could be done without doing injustice to others. . . ." In *Miners & Merchants Bank of Nanty-Glo Case*, supra, relief was refused because it so clearly appeared that restoration of the status quo of the parties was not possible. Speaking by Mr. Justice Drew we said (p. 122): "However, we are not now called upon to consider the soundness of the strict rule denying relief for a naked mistake of law, for it is fundamental that in order for a contract to be rescinded for this reason, it must be possible to return the parties to the same situation which they occupied before the agreement was entered into. In the words of Mr. Justice Mitchell, 'Equity has so far contented itself with relief in cases of mutual mistake of legal rights where it was possible to restore both parties to status quo . . .': *Fink v. Farmers' Bank*, 178 Pa. 154."

Referring again to *Norris v. Crowe*, supra, Mr. Justice Dean reached the conclusion there was no element of such extreme hardship in that case as to call for a departure from the general rule. He says (p. 450): "We see no hardship in this contract which should move a chancellor to reach forth his hand and destroy it." The learned Justice, however, comments upon an earlier decision of this Court, *Wilson v. Ott*, supra, where relief

was granted, and says (p. 448) : "The case . . . was a 'hard' case in which if the contract had been enforced according to law the defendants would have been compelled to pay $4,000 for a title they did not get, a case of gross hardship clearly constituting it an exception to the rule; therefore no assault on the general rule was necessary." He continues (p. 449) : "If the evidence shows, that in addition there would be great hardship in enforcing the contract made in ignorance of the law, equity may afford relief. But between the border of great hardship and actual fraud there are many contracts made in ignorance of the law; yet which result in no inequitable consequences from the enforcement of the general rule. In such cases the rule should be enforced."

It is plainly to be seen from the foregoing cases that however the general rule may have been criticized in the past, the courts of this State are not inclined to depart from its enforcement for the reason, as often stated, that if ignorance or mistake of law were generally allowed to be pleaded, "there could be no security in legal rights, no certainty in judicial investigations, no finality in litigations": *Clark v. Lehigh & W.-B. Coal Co.,* supra (p. 313). In consequence, relief has been refused in the following instances as a reference to the cases cited above will show: (a) where money has been paid under a mistake of law; (b) where a contract has been fairly made with full knowledge of the facts, even though a party thereto may have been under a misapprehension concerning its legal effect; (c) where the parties cannot be restored to their original position; (d) where an innocent third party will be injured if correction of the mistake be decreed; (e) where there has been unreasonable delay in seeking relief; (f) where there is a mistake of law, pure and simple, without any circumstances or equitable considerations which would move a chancellor to grant relief.

As stated above, we think the present case is one where, without an assault upon the general rule being

necessary, an exception should be made to it. The injustice and hardship which will be suffered by plaintiff afford grounds for granting equitable relief, upon the fundamental principle that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law. The defendants here cannot in conscience be allowed to retain the benefit or advantage which they have acquired by the satisfactions of the two mortgages in question.

We said in the words of Mr. Justice SCHAFFER, in *McKee v. Wilson*, 316 Pa. 389, affirming the decree of the court below striking off the satisfaction of a mortgage mistakenly entered (p. 392) : "To refuse the relief prayed for would be to allow Wilson to enrich himself, as the chancellor says, to the extent of $10,000 without having given anything of value therefor and to do so by a representation which he knew was not true. This should not be sanctioned." Recently in *St. Clement's B. & L. Assn. v. McCann*, 126 Pa. Superior Ct. 20, it was held that equity will afford relief where a mortgage had been satisfied through mistake, if the rights of third persons are not involved.

It is unnecessary to consider at length whether there was a merger in this case, because merger is a question of intention, and here the intention to keep the mortgages alive is specifically recited upon the face of the conveyance whereby the plaintiff received title to the property: *Moore v. Harrisburg Bank*, 8 Watts 138; *Moats v. Thompson, Exrs.*, 283 Pa. 313; *Weir v. Potter T. & M. G. Co.*, 323 Pa. 212; *Golder v. Bogash*, 325 Pa. 449; *Segreti, Exr., v. Frisk*, 328 Pa. 82.

The remaining questions raised by the assignments of error have been considered by us, and, in our opinion, are without merit.

The decree of the court below is affirmed. Costs to be paid by appellant.